IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JILL L. CHINN, AS EXECUTRIX OF THE ESTATE OF THOMAS R. CHINN & JILL L. CHINN,<br><br>Plaintiffs<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | §<br>§<br>§<br>§  CASE NO. 2:19-CV-00131-JRG<br>§<br>§<br>§<br>§  JURY TRIAL DEMANDED<br>§<br>§<br>§<br>§ |

**FIRST AMENDED COMPLAINT FOR REFUND**

Pursuant to this Court's Docket Control Order (ECF #21), Plaintiffs Jill L. Chinn, as executrix of the Estate of Thomas R. Chinn and Jill L. Chinn file this First Amended Complaint for Refund against Defendant, the United States of America, and allege as follows:

**I.    PARTIES**

1.    Plaintiffs have a legal residence and mailing address of 4727 McCann Road, Longview, TX 75605.

2.    Defendant is The United States of America and was served with the Complaint in this case and summons by certified mail, return receipt requested, to (i) Joseph D. Brown, U. S. Attorney for the Eastern District of Texas, c/o Civil Chief, 101 E. Park Blvd., Suite 500, Plano, Texas  75074; (ii) The Honorable William Barr, Attorney General, U.S. Department of Justice, 950 Pennsylvania Ave., NW, Washington, DC 20530; and (iii) Charles P. Rettig, Commissioner, Internal Revenue Service, 1111 Constitution Ave., NW, Washington, DC 20224.

## II.      STATEMENT OF CASE

1.      This is a civil action arising under Internal Revenue Code ("I.R.C.") § 7422. Plaintiffs seek a refund of overpayments totaling at least $4,008,559 (plus interest and any other assessments) attributable to Plaintiffs' 2011 tax year.  Additionally, or alternatively, Plaintiffs seek such amounts as in law and in fact are ultimately recoverable.

2.      This First Amended Complaint for Refund stems from the IRS' wrongful denials and failures to act regarding Plaintiffs' claims for credit or refund for 2011.

## III.      JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

2.      Plaintiffs paid all amounts at issue in this case.

3.      Plaintiffs complied with the requirements of I.R.C. § 7422(a) by filing a claim for credit or refund for the 2011 tax year (the "Refund Claim") of the $4,008,559 amount treated as an overpayment to the 2011 tax year via the items listed below whether considered alone or together:

(a) Plaintiffs' extension filing for the 2011 Form 1040 submitted to the IRS on or about March 28, 2012;

(b) Plaintiffs' Form 1040 for 2011 submitted to the IRS on or about October 15, 2012, and resubmitted numerous times after October 15, 2012, including in 2014, 2015, and 2016 during IRS proceedings relating to Plaintiffs' 2012 tax and including whatever submission is reflected in the IRS' records on August 11, 2016;

(c) Other submissions and communications to the IRS during the course of the IRS examination and a subsequent appellate proceeding with IRS Office of Appeals for the 2012 tax year during 2014, 2015, and 2016;

(d) Plaintiffs' extension filing for the 2012 Form 1040 on or about March 28, 2013;

(e) Plaintiffs' Form 1040 for 2012 filed on or about October 15, 2013; and

(f) Any and all other events notifying the IRS of Plaintiffs' desire to have over $4 million of payments to the 2011 tax year applied to satisfy their federal income tax obligations.

4. The Refund Claim was timely filed with the IRS under all accounts, as the IRS received the Refund Claim (i) within three years of the time on which the applicable tax return was filed; and (ii) within two years of the applicable payments. I.R.C. §§ 6511(a); 7422(d).

5. The IRS denied the Refund Claim on or about May 2, 2017.

6. Plaintiffs' Complaint for Refund was filed within two years of the date of the IRS' disallowance of the Refund Claim and thus is timely filed under I.R.C. § 6532(a).

7. Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1402(a)(1).

## IV. FACTUAL BACKGROUND

1. At all relevant times, Plaintiffs operated in a line of business where annual income can fluctuate greatly, one year to the next.

2. To ensure their tax payment obligations were satisfied, Plaintiffs often elected to apply tax overpayments from one tax year to the following tax year.

3. Plaintiffs also relied on the professional assistance of a CPA to ensure Plaintiffs' tax compliance. Unless indicated otherwise, the actions described below were taken with the professional assistance of Plaintiffs' CPA.

4. The IRS applied an overpayment from the 2010 tax year to the 2011 tax year.

5. After the application of the overpayment from the 2010 tax year to the 2011 tax year, there was no longer any overpayment for the 2010 tax year.

6. On or around the time of the 2010 tax return filing, the overpayment amount from the 2010 tax year was applied by the IRS as a payment to Plaintiffs' income taxes for the 2011 tax year.

7. The payment referenced in the prior sentence was deemed to have been paid when the Form 1040 for the 2011 tax year was due.

8. The Form 1040 for the 2011 tax year was due, without extension, on April 17, 2012.

9. Taking into account the 2010 overpayment, Plaintiffs estimated their 2011 tax liability and requested (and received) an extension to file their 2011 tax return by October 15, 2012.

10. On or around October 15, 2012, Plaintiffs filed their 2011 tax return with the IRS.

11. On their 2011 tax return, Plaintiffs reported $60,255 of tax; $51,606 of tax withheld; and $4,017,208 of estimated tax payments and amount applied to the 2011 tax return from the 2010 tax return. Taken together, this created a $4,008,559 overpayment for the 2011 tax year.

12. Taking into account the 2011 overpayment, Plaintiffs estimated their 2012 tax liability and requested (and received) an extension to file their 2012 tax return by October 15, 2013.

13. On or around October 15, 2013, Plaintiffs timely filed their 2012 tax return with the IRS.

14. On their 2012 tax return, Plaintiffs reported $0 of tax; $50,926 of tax withheld; and $4,008,559 of estimated tax payments representing the 2011 tax overpayment.

15. The IRS selected Plaintiffs' 2012 tax return for examination.

16. The IRS revenue agent who conducted the examination, Jennifer Brown ("Brown"), was assigned to the examination on or about March 6, 2014.

17. No later than March 28, 2014, Brown began her review of the 2012 Form 1040.

18. During the IRS examination, there were numerous communications and written submissions relating to the 2011 tax return and the overpayment that Plaintiffs sought to have applied as a payment towards their income taxes for 2012, i.e., the year of the audit.

19. On or around May 6, 2014 and during the course of the IRS' 2012 tax return examination, the IRS requested a copy of Plaintiffs' 2011 and 2013 tax returns.

20. Brown and Plaintiffs' CPA discussed Brown's request for the 2011 tax return. Brown told Plaintiffs' CPA that he could submit through her a signed 2011 tax return, that she would get it processed, and that he need not submit the return to the IRS servicing center where the return might otherwise be sent.

21. On or about June 6, 2014, Plaintiffs responded to and honored the IRS' request for a copy of Plaintiffs' 2011 and 2013 tax returns and mailed a processable 2011 tax return to Brown.

22. Plaintiffs' CPA again on or around August 25, 2014, sent a copy of the 2011 tax return to the IRS examiner with correspondence indicating that the tax return was "2011 as filed."

23. On or about August 26, 2014, Plaintiffs' CPA sent another copy of the 2011 tax return to the IRS examiner.

24. On June 28, 2015, Plaintiffs' office manager sent Plaintiffs' CPA a copy of the signed signature page from Plaintiffs' 2011 tax return.

25. On September 11, 2015, the IRS examiner sent a fax to Plaintiffs' CPA asking if the 2011 and 2013 tax returns were filed.

26. On September 15, 2015, the IRS examiner included the text from the September 11, 2015 fax and supplemented that earlier fax with another fax, which told the CPA to "please ignore this request."

27. Plaintiffs' CPA also sent in other copies of Plaintiffs' 2011 tax return, including in-person to the IRS office in Tyler, Texas and by mail to other IRS servicing centers.

28. Plaintiffs' CPA, as well as Plaintiffs, understood that at this point in time, the IRS had received the 2011 tax return for processing (numerous times) and whatever issues existed that may have prevented the IRS' records from reflecting the timely 2011 tax return filing and other submissions of the 2011 tax return had at this point been remedied, as was communicated by the IRS.

29. Just two weeks later, to further buttress Plaintiffs' and Plaintiffs' CPA's understanding that the unfiled return issue had been resolved, by letter dated September 29, 2015, an IRS managerial-level employee sent Plaintiffs an examination report showing that the 2012 IRS audit had been completed.

30. Plaintiffs, yet again, submitted their 2011 tax return—which reflected the same $4,008,559 tax overpayment—to the IRS on or about October 29, 2015. IRS account transcripts for the 2011 tax year erroneously treat this submission (or perhaps even earlier submissions) as having been received on or about August 11, 2016 and as the first time the IRS considered Plaintiffs' 2011 tax return to be filed with the IRS.

31. The IRS processed Plaintiffs' 2011 tax return as filed, without proposing any adjustments to any item on the return.

32. When the IRS processed Plaintiffs' 2011 tax return, the IRS applied the overpayment from the 2010 tax year to tax year 2011. The IRS did not apply the 2011 overpayment to tax year 2012.

33. The IRS examiner eventually proposed adjustments to Plaintiffs' 2012 tax return. The IRS' adjustments to the 2012 tax year included attributes from the 2011 tax return (e.g., depletion and capital loss carryforwards).

34. All amounts for 2012 due as a result of the examination and proceedings with Appeals have been paid without application of the 2011 overpayment.

35. Plaintiffs, in a later tax year, requested that the IRS refund funds attributable to the 2011 overpayment, but the refund has not been granted.

36. Within all applicable periods for claiming a credit or refund, the IRS knew or should have known that the Plaintiffs sought to claim the 2011 overpayment to which they were legally entitled.

37. The IRS removed the 2011 overpayment from the IRS' records for Plaintiffs' 2011 tax year. Upon removal, the IRS transferred the overpayment to the IRS' excess collections account.

38. By letter dated May 2, 2017, the IRS denied Plaintiffs' Refund Claim.

39. On or about May 30, 2017, Plaintiffs protested the denial of the 2011 claim for credit.

40. The IRS has not granted Plaintiffs' Refund Claim, contending that Plaintiffs did not timely file the Refund Claim.

41. The IRS currently holds at least $4,008,559 of Plaintiffs' money (plus interest), without legal justification.

42. The periods for assessing additional tax relating to the 2011 tax year (and the immediately preceding and succeeding years) have expired.

## V.   GROUNDS FOR RELIEF

1. Plaintiffs are entitled to a refund because Plaintiffs timely filed their 2011 tax return, which reflected Plaintiffs' tax overpayment from the 2011 tax year. The IRS failed to either apply this payment to the 2012 tax year on the last day prescribed for payment as required by I.R.C. § 6513(a) or refund the overpayment.

   (a) An original tax return, such as Plaintiffs' tax return for 2011, constitutes a claim for refund or credit. *See* Treas. Reg. § 301.6402-3(a)(5).

   (b) Defendant is required to refund the 2011 overpayment.

2. Plaintiffs are also entitled to a refund under the long-recognized informal claim doctrine, which results in a toll to the statute of limitations. *See United States v. Kales*, 314 U.S. 186 (1941).

   (a) In general, an informal claim for credit or refund ("informal claim") must: (1) be filed within the statutory period; (2) put the IRS on notice of the taxpayer's claim; (3) describe the tax and year with sufficient particularity to allow the IRS to undertake an investigation; and (4) have a written component. *PALA Inc. Employees Profit Sharing Plan and Trust Agreement v. United States*, 234 F.3d 873 (5th Cir. 2000).

   (b) Here, the IRS received numerous communications and submissions that should *at a minimum* be considered informal claims, taken separately or as a whole, under the four prongs set forth above, including but not limited to the tax return extensions and each tax return submission during the applicable period of I.R.C. § 6511 and during the audit of the 2012 tax year (and related proceedings before the IRS Office of Appeals). *See Kelly v. United States*, No. 3:96-cv-809-AS, 1998 WL 233856 (N.D. Ind. 1998) (holding that improperly filing a formal claim can constitute an informal claim). In

addition, the IRS had ample written and oral notice of Plaintiffs' actual claim to the 2011 overpayment. Indeed, there is no dispute that on or about October 15, 2013, the IRS received the 2012 tax return on which Plaintiffs listed the exact (minimum) amount in dispute—$4,008,559—on the line for "2012 estimated tax payments and amount applied from 2011 return."

    1. Plaintiffs' 2011 tax return submissions, to the extent they may have been initially deficient in any respect, can themselves be considered informal claims for 2011.

    2. Plaintiffs' 2012 tax return filing, in addition to being considered in conjunction with the numerous other communications of Plaintiffs' claims for refund or credit, can itself be considered an informal claim for 2011.

(c) Any deficiencies that may have existed with Plaintiffs' informal claims were corrected (i.e., "perfected") by the following non-exclusive list of actions:

    1. The submission of the 2011 tax return on or about October 29, 2015 (i.e., that is reflected in the IRS' records on August 11, 2016, or whatever other submission of the 2011 tax return that the IRS treated as filed on August 11, 2016);

(d) Despite processing the 2011 tax return that the IRS treated as filed on August 11, 2016, the IRS made no changes to any item on the return within the limitations period for doing so.

(e) Defendant is required to refund the 2011 overpayment.

3. The IRS has waived any arguments that the 2011 tax return was not filed within the applicable period for claiming a credit or was not itself a valid claim for credit. By the IRS

**FIRST AMENDED COMPLAINT FOR REFUND**  Page 9

including attributes from the 2011 tax return in its computations for the 2012 tax year, i.e., before the date on which the IRS records show the 2011 tax return was filed, the IRS has waived any arguments that the 2011 tax return was not properly or timely filed for purposes of Plaintiffs' Refund Claim. *See PALA Inc. Employees Profit Sharing Plan and Trust Agreement v. United States*, 234 F.3d 873 (5th Cir. 2000) ("The Supreme Court has long recognized the power of the IRS to waive the formal requirements established by the Treasury Department for refund claims."); *see also Blue v. United States*, 108 Fed. Cl. 61 (2012) (holding that where the IRS treats something as a claim, the IRS has waived any right to claim something was not a valid claim—even in the case of an "unperfected" informal claim).

4. Defendant is estopped from claiming that Plaintiffs did not timely file their 2011 tax return by virtue of (i) the IRS examiner's representations to Plaintiffs' CPA, including that she would get the 2011 tax return she requested to be sent to her, and was sent to her, filed and a September 15, 2015 written representation to "please ignore this request," and (ii) incorporating 2011 tax return items into the 2012 IRS computations. *See United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 957 (10th Cir. 2008) (holding that estoppel applied where the party "reasonably relied upon the written assurances of the governmental agency").

5. Regardless of the filing date of the 2011 tax return reflected in the IRS' records, under all circumstances, Plaintiffs timely made a claim for credit or refund of the amount in dispute.
    (a) Claims for credit or refund must be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever expires later. I.R.C. §

      6511(a). Where no return is filed, the taxpayer has two years from the time the tax was paid. *Id.*

  (b) When an informal claim is submitted during the limitations period for claiming a refund, the limitations period is tolled. *United States v. Kales*, 314 U.S. 186 (1941) (holding that the submission of a taxpayer's letter "stay[ed] the running of the statute of limitation on the taxpayer's right to a refund").

  (c) Plaintiffs, having received an extension to file their 2011 tax return, had until October 15, 2015 to claim a credit or refund for the 2011 tax year.

  (d) Plaintiffs filed an informal claim (in addition to the timely filed 2011 tax return) before October 15, 2015 and tolled the statute of limitations until the IRS ultimately processed the Refund Claim.

  (e) Plaintiffs' Refund Claim was timely filed and should be granted.

6. The sole issue in this case is whether Plaintiffs timely filed a Refund Claim.

## VI.  **JURY DEMAND**

Plaintiffs request a jury trial for all issues triable as of right by a jury pursuant to Federal Rule of Civil Procedure 38(b).

## VII.  **PRAYER**

Plaintiffs respectfully pray for judgment against Defendant and respectfully ask the Court to order Defendant to refund the Payments of at least $4,008,559 plus interest and costs allowed by law to Plaintiffs. Plaintiffs also request that the Court grant Plaintiffs such further relief, legal or equitable, to which Plaintiffs may be entitled.

        Respectfully submitted,

By:   /s/ Mary E. Wood
       Mary E. Wood (Lead Attorney)
       State Bar No.  24047137

       /s/ Josh O. Ungerman
       Josh O. Ungerman
       State Bar No. 20393150

       /s/ Jeffrey M. Glassman
       Jeffrey M. Glassman
       State Bar No. 24090128

MEADOWS, COLLIER, REED
COUSINS, CROUCH & UNGERMAN, L.L.P.
901 Main Street, Suite 3700
Dallas, TX  75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
mwood@meadowscollier.com
jungerman@meadowscollier.com
jglassman@meadowscollier.com

Dated:  July 24, 2020      ATTORNEYS FOR PLAINTIFFS

**FIRST AMENDED COMPLAINT FOR REFUND**      Page 12

515067

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document was filed on the Court's CM/ECF system on July 24, 2020, which will electronically serve all counsel of record.

                              /s/ Jeffrey M. Glassman
                              Jeffrey M. Glassman